**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFERSON COUNTY, BUTLER COUNTY, CAPE GIRARDEAU COUNTY, CHRISTIAN COUNTY, CITY OF INDEPENDENCE, CITY OF JOPLIN, CRAWFORD COUNTY, DENT COUNTY, DUNKLIN COUNTY, FRANKLIN COUNTY, GREENE COUNTY, IRON COUNTY, JASPER COUNTY, MADISON COUNTY, PERRY COUNTY, STE. GENEVIEVE COUNTY, STONE COUNTY, TANEY COUNTY, TEXAS COUNTY, AND WASHINGTON COUNTY, | Case No. |
| | (Removal from: The Missouri Circuit Court, Twenty-Second Judicial Circuit, St. Louis City) |
| *Plaintiffs* | |
| v. | |
| DANNIE E. WILLIAMS, M.D.; DELMAR PRIMARY CARE ASSOCIATES, LLC; PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY; RICHARD S. SACKLER, M.D.; TEVA PHARMACEUTICALS INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JOHNSON & JOHNSON; JANSSEN PHARMACEUTICALS, INC., F/K/A JANSSEN PHARMACEUTICA INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; NORAMCO, INC.; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACUETICALS INC.; ALLERGAN PLC F/K/A ACTAVIS PLC F/K/A ACTAVIS, INC., F/K/A WATSON PHARMACUETICALS, INC.; WATSON LABORATORIES, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC. F/K/A WATSON PHARMA, INC.; MALLINCKRODT, PLC; | |

SL 3173990.1

MALLINCKRODT LLC; SPECGX LLC;
MCKESSON CORPORATION;
CARDINAL HEALTH, INC.;
AMERISOURCEBERGEN
CORPORATION;
AMERISOURCEBERGEN DRUG
CORPORATION; EXPRESS SCRIPTS
HOLDING COMPANY; EXPRESS
SCRIPTS PHARMACY, INC.; EXPRESS
SCRIPTS, INC.; WAL-MART, INC.;
TARGET CORPORATION; WALGREEN
COMPANY; CVS HEALTH
CORPORATION; CVS PHARMACY, INC.;
CAREMARK RX, LLC; CAREMARKPCS
HEALTH, LLC; CAREMARK, LLC;
MISSOURI CVS LLC; MYLAN
PHARMACEUTICALS INC.; DEPOMED,
INC.; INSYS PHARMA, INC., D/B/A
INSYS THERAPEUTICS, INC.; UNITED
HEALTH GROUP INCORPORATED;
OPTUM, INC.; OPTUMRX, INC.,

*Defendants.*

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and with full reservation of

defenses, Defendant CVS Pharmacy, Inc. ("CVS") gives notice of the removal of this action from

the Missouri Circuit Court, Twenty-Second Judicial Circuit, St. Louis City, Missouri, to the United

States District Court for the Eastern District of Missouri, Eastern Division. In support of removal,

CVS provides the required "short and plain statement of the grounds for removal." 28 U.S.C.

§ 1446(a); *see also Dart Cherokee Basin Operating Co., LLC* v. *Owens*¸ 135 S. Ct. 547, 553 (2014)

("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal

Rules of Civil Procedure.").

This is Plaintiff Jefferson County's and many of its co-plaintiffs' second attempt to proceed

in State court.  Jefferson County and ten other plaintiffs filed a substantially similar Petition in St.

2

Louis City Circuit Court on August 1, 2018. That case was removed to this Court on August 31, 2018. *See Jefferson County, et al.* v. *Purdue Pharma L.P.*, No. 4:18-cv-01477 (E.D. Mo., Aug. 31, 2018). Jefferson County, along with the other Plaintiffs, moved to remand. Defendant CVS filed a motion asking this Court to defer ruling on the remand proceedings to allow the Judicial Panel on Multidistrict Litigation ("JPML") to transfer the case to an MDL pending in the Northern District of Ohio.

On October 18, 2018, the District Court (Hon. Ronnie L. White) granted CVS's motion and stayed the case to allow the JPML to transfer the action to the MDL and to allow the MDL Court to rule on any jurisdictional issues along with other cases that raise the same removal issues. *See id.*, Dkt. No. 81. Before the JPML was able to finalize its transfer order, however, Jefferson County, et al. voluntarily dismissed their own action, Dkt. Nos. 82-83, and filed a second action (this action) in State court. Although Jefferson County has added several parties as both plaintiffs and defendants, its case remains the same. As before, this case is removable and should be transferred to the MDL.

## I.     Nature of Removed Action

1.     On January 29, 2019, twenty political subdivisions of Missouri ("Plaintiffs")[1] filed a Petition in the Circuit Court for the City of St. Louis, Missouri, for claims relating to prescription opioid medications. Plaintiffs assert claims against five defendant groups: manufacturers, distributors, pharmacies, pharmacy benefit managers ("PBMs"), and physicians. Pet. ¶¶ 23-46. Plaintiffs bring claims for public nuisance (Count I), negligence per se – illegal diversion (Count

---

[1]Plaintiffs are Jefferson County, Butler County, Cape Girardeau County, Christian County, City of Independence, City of Joplin, Crawford County, Dent County, Dunklin County, Franklin County, Greene County, Iron County, Jasper County, Madison County, Perry County, Ste. Genevieve County, Stone County, Taney County, Texas County, and Washington County.

SL 3173990.1

II), negligence (Count III), fraud in the omission (Count IV), fraud (Count V), and negligent misrepresentation (Count VI). Plaintiffs seek damages and equitable relief for alleged injuries to themselves and their residents.

2.     This action is one of more than 1,900 opioid lawsuits filed by government entities against manufacturers, distributors, and retailers of prescription opioid medications, as well as PBMs and others. Plaintiffs in these cases allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing the opioid epidemic.

3.     On December 5, 2017, the JPML created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for cases just like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) **(Exhibit 1)**. To date, more than 1,600 actions have been transferred to the Opiate MDL.

4.     Plaintiffs' 261-page Petition resembles nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations against the manufacturers and distributors are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

SL 3173990.1

5.      The thrust of the Petition is that the "Manufacturer Defendants" allegedly made "deceptive and misleading statements" that "were directed to and reached Missouri prescribers and patients, with the intent of distorting their views on the risks, benefits, and superiority of opioids for treatment of chronic pain." Pet. ¶ 266. Plaintiffs assert that Defendants "worked through branded and unbranded marketing to build confidence in long-term opioid use by overstating its benefits and downplaying its risks . . . [and] worked through their own staffs of sales representatives, physician speakers . . . and advertising in medical journals to claim their share of th[e] broader [chronic pain] market." *Id.* at ¶ 117. All of the Manufacturer Defendants (aside from Mallinckrodt LLC) are citizens of States other than Missouri. *See id.* at ¶¶ 23-60.

6.      As to the "Distributor Defendants," Plaintiffs allege that they "sold prescription opioids . . . to retailers in Plaintiff Counties and Cities and/or to retailers from which Defendants knew prescription opioids were likely to be diverted to Plaintiff Counties and Cities," *id.* at ¶ 660, and "failed to report 'suspicious orders' originating from Plaintiff Counties and Cities." *Id.* at ¶ 668. Plaintiffs further allege that the Distributor Defendants "unlawfully filled suspicious orders of unusual size, orders deviating substantially from a normal pattern and/or orders of unusual frequency in Plaintiff Counties and Cities." *Id.* at ¶ 669. All of the Distributor Defendants are citizens of states other than Missouri. *See id.* at ¶¶ 34-36.

7.      With regard to the "Pharmacy Defendants," Plaintiffs contend that they failed to monitor and secure their inventories of opioids and regularly filled questionable prescription orders. *See id.* at ¶¶ 611-43. Plaintiffs further allege that the "PBM Defendants" "place roadblocks in the way of limiting excessive opioid prescriptions" and "make it more difficult to obtain Abuse Deterrent Formula (ADF) opioids," *id.* at ¶ 720, as well as "play a unique role in controlling which

SL 3173990.1

pain medications reach the marketplace—and which do not—through their self-serving formulary design." *Id.* at ¶ 725.

8.      Plaintiffs also contend that the "Physician Defendants" operated "pill mills," which Plaintiffs describe as "operation[s] in which a doctor, clinic or pharmacy prescribes and/or dispenses narcotics without a legitimate medical purpose." Pet ¶ 742. Plaintiffs allege that these Physician Defendants "did minimal examinations of patients prior to prescribing" opioids, and "advised patients to pay for opioid prescriptions with cash in order to avoid insurance and regulatory oversight." *See id.* at ¶¶ 744-45.

9.      Based on these allegations, Plaintiffs claim a litany of injuries to themselves and their residents stemming from the alleged abuse of addictive opioids by residents in Plaintiffs' counties and cities. These include alleged damages in the form of expenses incurred in providing health, social, and law enforcement services related to opioid addiction and death, as well as economic, physical, and mental injuries to their citizens.

## II.      Federal Question Jurisdiction Exists

10.      A defendant may remove any state-court action that originally could have been filed in federal court. 28 U.S.C. § 1441(a). That includes cases involving a federal question or which arise under federal law.

11.      The "well-pleaded complaint rule" governs whether a complaint raises a federal question or arises under federal law. Under that rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 392 (1987). But a case involving only state-law claims can give rise to federal-question jurisdiction "if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law." *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *Franchise Tax Bd. of Cal.* v.

6

*Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 13 (1983) (case arises under federal law when "federal law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

12.     Here, Plaintiffs allege that Distributor Defendants have a duty to "register with the DEA, pursuant to the federal Controlled Substance[s] Act," *id*. at ¶ 646, have a duty to "monitor and detect suspicious orders of prescription opioids," *id*. at ¶ 661, and have "a duty under federal and state law to investigate and refuse suspicious orders of prescription opioids." *Id*. at ¶ 662. Plaintiffs argue that Distributor defendants "breached their duty to maintain effective controls against diversion" of opiates, *id*. at ¶ 671 "breached their duty to design . . . a system to disclose . . . suspicious orders when discovered, in violation of their duties under federal and state law," *id*. at ¶ 672, and "breached their duty to exercise due diligence to avoid filling suspicious orders that might be diverted . . . ." *Id*. at ¶ 673. Plaintiffs make similar allegations with respect to the Manufacturer Defendants' duties to monitor and prevent suspicious orders under federal law, *see id*. ¶¶ 726-741, and the Pharmacy Defendants' duties to monitor and refuse to fill suspicious opioid prescriptions under federal law. *See id*. at ¶¶  611-643.

13.     Plaintiffs base their claims, in part, on alleged noncompliance with federal regulations and violation of federal law. Resolving Plaintiffs' claims would therefore require resolving substantial federal questions such that the lawsuit originally could have been filed in federal court. 28 U.S.C. § 1441(a); *see also Grable & Sons Metal Prod., Inc.* v. *Darue Eng'g & Mfg*., 545 U.S. 308, 312 (2005) ("[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").

## III.    This Action is Removable Under CAFA.

14.     Plaintiffs' lawsuit is also removable under the Class Action Fairness Act (28 U.S.C. §§ 1332(d) and 1453(b)) because (1) litigation of this case in federal court raises factual and legal

SL 3173990.1

issues of national importance that furthers CAFA's overall purpose; (2) the lawsuit was filed as a class action; and (3) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. 28 U.S.C. § 1332(d); *Brown* v. *Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 932 (8th Cir. 2013).

### A.  This is an Interstate Case of National Importance

15.    First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Through CAFA, Congress expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co.* v. *Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance." (citations and quotes omitted)); *accord Dart Cherokee*, 135 S. Ct. at 554; *Westerfeld* v. *Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).

16.    This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, retail pharmacies, pharmacy benefit managers, and others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 1,600 cases that are part of a national narrative involving an opioid "crisis" and epidemic allegedly besieging certain counties and cities in Missouri and the rest of the country. Plaintiffs repeat this narrative and have scripted their Petition from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiffs assert that their claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.*, Pet. ¶ 79 ("[P]rescription opioid use contributed to 16,651 overdose deaths nationally in 2010"); *id*. at ¶ 138 ("Defendants ensure marketing consistency nationwide through national and regional sales representative training"); *id*. at ¶ 172 (alleging that Defendants disseminated misleading marketing materials "in

SL 3173990.1

nationally circulated journals"); *id.* at ¶ 263 ("Both Missouri and federal law impose on all registrants the obligation to design and operate a system to disclose to the registrant suspicious orders of controlled substances . . . ."); *id.* at ¶ 611 (alleging that the Pharmacy Defendants "owe a duty under . . . federal law . . . to monitor, detect, investigate, refuse to fill, and report suspicious orders . . . ."); *id.* at ¶ 622 (alleging that CVS violated "state and federal law" in filling allegedly suspicious prescriptions); *id.* at ¶ 647 ("Each Defendant has an affirmative duty under federal and Missouri law to act as a gatekeeper guarding against the diversion of opioids"); *see also* ¶¶ 82, 241, 616, 618, 624, 629, 726, 728, 731, 761, 781, and 794.

17.     As Plaintiffs aver, the issues in this case implicate factual and legal issues that span well beyond state lines, and as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case, one court in the U.S. District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington* v. *AmerisourceBergen Drug Corp., et al.*, 3:17-01362, 2017 WL 3317300, at *2 (S.D. W. Va. Aug. 3, 2017).

18.     Plaintiffs, like the other plaintiffs in the Opiate MDL, have alleged that the Distributor Defendants failed to make reports to the Drug Enforcement Administration ("DEA"). *See* Pet., at pp. 8-9 ("The second theory of liability centers on Defendants' violations of state and federal laws requiring any entity who manufactures, distributes, sells, or prescribes opioids to report . . . suspicious orders to the . . . federal Drug Enforcement Agency (DEA) . . . . Plaintiff Counties and Cities have had to bear the costs of Defendants' failure to adequately report suspicious orders . . . ."); *id.* at ¶ 611-643; 668; 726-41. Judge Polster has established protocols for

9

the DEA to submit confidential and sensitive data from its internal databases for use in the litigation.[2]

19.     In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

**B.  This Case Essentially Is a Class Action**

20.     Despite Plaintiffs' insistence that this case "is not a class action," CAFA applies because this case *is* essentially a class action and should be treated as such for the purposes of subject matter jurisdiction. While Plaintiffs have not alleged a putative class action on the face of the Petition, the Court should look to the overall Petition to determine whether it is a "class action in all but name." *W. Va. Ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010); *see also Williams* v. *Emp'rs Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) ("[L]awsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.") (citation omitted).

21.     CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. 1332(d)(2); *see also Raskas* v. *Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013); *Cova* v. *Charter Commc'ns, Inc.*, 2016 WL 4368100, at *2 (E.D. Mo., Aug. 16, 2016). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that

---

[2]Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

SL 3173990.1

appears to be a class action in all but name." *W. Va. Ex rel. McGraw*, 705 F. Supp. 2d at 452 (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest).

22.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34. Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams*, 845 F.3d and 900-01; *see also Dart Cherokee*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

23.     Here, Plaintiffs are acting as representatives for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purposed misconduct. Plaintiffs allege that Defendants have inflicted both economic and non-economic injuries on their individual residents. *E.g.*, Compl. ¶ 610 (alleging Manufacturers' deceptive marketing has caused "opioid over prescription—including addiction, overdose, and death—that have been visited on Missouri and its residents . . . ."); *id.* at ¶ 750 (alleging Defendants' deceptive practices have caused a

11

nuisance, known as the "opioid epidemic, which [has] reported[ly] . . . killed at least 908 people in Missouri in 2016 alone, including individuals in each of the Plaintiff Counties and Cities."); *id.* at ¶ 754 (alleging that Defendants alleged conspiracy resulted in "addiction and abuse, an elevated level of crime, death and injuries to the residents of Plaintiff Counties and Cities . . . ."); *id.* at ¶ 755 ("Defendants have unlawfully and/or intentionally caused and permitted dangerous drugs under their control to be diverted in a way to injure individuals in Plaintiff Counties and Cities . . . ."); *id.* at ¶ 758 ("As a direct and proximate result of Defendants' conduct, individuals within Plaintiff Counties and Cities suffered from physical and mental injuries, including death . . . ."); *id.* at ¶ 763 (alleging the opioid crisis has "created substantial addiction problems" for Plaintiffs' residents, "the costs of which Plaintiff Counties and Cities bore resulting in significant economic damages."); *id.* at ¶ 765 ("Defendants' actions were a substantial factor in making opioids widely available and widely used by individuals in Plaintiff Counties and Cities."); *id.* at ¶ 806 (emphasis added) ("The public and medical professionals, including those within Plaintiff Counties and Cities, suffered a pecuniary loss . . . ."); *id.* at ¶ 808 ("As a direct and proximate result of Defendants' conduct, individuals within Plaintiff Counties and Cities suffered from physical and mental injures, including death . . . .").

24.     Plaintiffs' alleged injuries derive from their residents' injuries and cannot be separated from those injuries. Plaintiffs seek to recover costs in providing law enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from their residents' alleged opioid abuse and addiction. Damages, too—to the extent that there are any attributable to Defendants—would be a calculation of aggregate damages resulting from individual instances of opioid addiction and death.

SL 3173990.1

25.     The Petition satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds injured. *See* 28 U.S.C. § 1332(d)(5)(B); *see also* Pet. ¶¶ 1-20. In determining whether this requirement is met, courts in the Eighth Circuit have considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who have been actually affected by such conduct. *See, e.g.*, *Cova*, 2016 WL 4368100, at *3 (holding that to show the number of putative plaintiffs exceeds 100, defendants were only required to provide the number of their subscribers, not the number of subscribers who were actually affected by defendants' alleged misconduct); *id.* at *3 ("It is instead sufficient to show it is more likely than not that, if the defendant engaged in the conduct alleged, the proposed class would have 100 or more members.").

26.     Here, the Petition alleges that a total of 324 people died in Jefferson County alone due to opioid overdoses during a period of time between 2013 and 2017, and that Jefferson County incurred 1,941 emergency visits "in the same time period due to opioid misuse." Pet. ¶ 1. Elsewhere, Plaintiffs allege that Defendants' deceptive practices have caused the opioid epidemic, "kill[ing] 908 people in Missouri in 2016 . . . including citizens in each of the Plaintiff Counties and Cities." *Id.* at ¶ 750. The potential number of people who have or may be affected thus well exceeds the 100 member requirement under CAFA.

**C.  CAFA's Minimal Diversity Requirements Are Met**

27.     There is minimal diversity between Plaintiffs and Defendants under CAFA. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal

SL 3173990.1

diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A); *see also Cova*, 2016 WL 4368100, at *2.

28.     For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

29.     Applying these principles, there is minimal diversity between the parties. Plaintiffs are political subdivisions of Missouri. Pet. ¶ 1-22. And many of the Defendants are citizens of States other than Missouri. *See id*. at ¶¶ 23-46. To name a few:

a.     Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc., are both corporations organized under the laws of Delaware and both maintain the principal places of business in Malvern, Pennsylvania. They are, accordingly, citizens of Delaware and Pennsylvania.

b.     Defendant Purdue Pharma, L.P. is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut. It is, accordingly, a citizen of Delaware and Connecticut.

c.     Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business in North

14

Wales, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

d. Defendant Cephalon, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Frazer, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

e. Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey. It is, accordingly, a citizen of New Jersey.

f. Defendant Watson Laboratories, Inc. is a corporation organized under the laws of New Jersey with its principal place of business in Parsippany, New Jersey. Accordingly, it is a citizen of New Jersey.

g. Defendant Actavis LLC is a limited liability company organized under the laws of Delaware and its principal place of business is in Parsippany, New Jersey. Accordingly, it is a citizen of New Jersey and Delaware.

h. Defendant Actavis Pharma, Inc., f/k/a Watson Pharma, Inc., is a Delaware corporation with its principal place of business in New Jersey. Accordingly, it is a citizen of New Jersey and Delaware.

i. Defendant Walgreen Co. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois. Accordingly, it is a citizen of Illinois.

j. Defendant McKesson Corporation is a corporation organized under the laws of Delaware with its principal place of business in San Francisco, California. Accordingly, it is a citizen of both California and Delaware.

15

30.     Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

**D.  The Amount in Controversy Exceeds the Jurisdictional Limit**

31.     The amount in controversy exceeds the jurisdictional threshold under CAFA. Where, as here, Plaintiffs' Petition alleges no specific amount of damages, this burden is one of "pleading" and not one of "proof." *City of O'Fallon, Mo.* v. *CenturyLink, Inc.*, 930 F. Supp. 2d 1035, 1041 (E.D. Mo. 2013) (quotes omitted); *Cova*, 2016 WL 4368100, at *3. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554. "[T]he jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . ." *Bell* v. *Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (citation omitted). And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

32.     Here, Plaintiffs allege injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiffs and their nearly one million residents, with allegations extending as far back as the late 1990s. *See id.* at ¶ 72. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[3]

**IV.     Compliance with Procedural Requirements**

33.     The removing Defendant has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446, and the Eastern District of Missouri Local Rules.  In accordance with

---

[3]The amount in controversy represents only what Plaintiffs request at this stage in the proceeding. This is not an admission that Plaintiffs are entitled to recover this amount. *See Hartis* v. *Chi. Title Ins. Co.*, 694 F.3d 935, 945 (8th Cir. 2012); *City of O'Fallon*, 930 F. Supp. 2d at 1041.

SL 3173990.1

E.D. Mo. L.R. 81-2.03, attached hereto as **Exhibit 2** is a copy of all process, pleadings, orders and other documents now on file in the State Court.

34.     A defendant must file a notice of removal within thirty days after receiving service of process.  *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999). No Defendant has been served, so the thirty-day clock has not even begun to run. Notice is therefore timely.

35.     In accordance with 28 U.S.C. § 1441(a), venue is proper in this Court because the United States District Court for the Eastern District of Missouri is the federal judicial district embracing the Missouri Circuit Court, 22nd Judicial Circuit, St. Louis City, where the County originally filed this action.

36.     All defendants properly served must consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("When a civil action is removed solely under section 1441(a), all defendants *who have been properly joined and served* must join in or consent to the removal of the action" (emphasis added)). Here, no Defendant has been served, so no consent is required beyond the Moving Defendants' notice of removal.

37.     Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. § 1453(b) (emphasis added).

38.     After filing this Notice, in accordance with 28 U.S.C. § 1446(d), CVS will serve a copy of this Notice upon Plaintiffs and will file a copy of the Notice with the Clerk of the Missouri Circuit Court, 22nd Judicial Circuit, St. Louis City.

39.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendants' right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the

SL 3173990.1

propriety of removal of this action, Defendant CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

## **<u>CONCLUSION</u>**

WHEREFORE, CVS removes this action to this Court for further proceedings according to law.

January 31, 2019

Respectfully submitted,

/s/ *Gerald P. Greiman*
Gerald P. Greiman #26668MO
SPENCER FANE LLP
1 N. Brentwood Blvd., Suite 1000
St. Louis, Missouri 63105
(314) 863–7733
(314) 862–4656 (fax)
ggreiman@spencerfane.com

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202–1031
(410) 949–1160
cocroinin@zuckerman.com

Eric R. Delinsky*
Alexandra W. Miller*
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036–5807
(202) 778–1800
edelinsky@zuckerman.com
smiller@zuckerman.com

* denotes national counsel who will seek pro hac vice admission

*Counsel for CVS Pharmacy, Inc.*

SL 3173990.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2019, a true and correct copy of the foregoing Notice of Removal was electronically filed with the Clerk of the Court, to be served by the Court's electronic notification system upon all counsel of record, and a copy of the same was served on the following individuals via First Class U.S. Mail:

Jeffrey J. Lowe
John F. Garvey
Sarah Shoemake Doles
Alyson M. Petrick
CAREY DANIS & LOWE
8235 Forsyth Blvd
St. Louis, MO 63105
jlowe@careydanis.com
jgarvey@careydanis.com
sdoles@careydanis.com
apetrick@careydanis.com

James P. Holloran
Anne Callis
Thomas E. Schwartz
HOLLORAN SCHWARTZ & GAERTNER
9200 Litzsinger Road
St. Louis, MO 63144

Derek Good
CHURMAN, HOWALD, WEBER,
SENKEL & NORRICK, LLC
P.O. Box 800-301 Main Street
Hillsboro, MO 63050
good@thurmanlaw.com

Sara L. Marler
Scott J. Schrum
Ramona Gau
MARLER SCHRUM
406 E. Karsch Blvd.
Farmington, Missouri 63640
smarler@marlerschrum.com
sschrum@marlerschrum.com
rgau@marlerschrum.com

Patricia J. Shilling
STYRON & SHILLING
302 E. Church Street
Ozark, Missouri 65721
pjs@styronlaw.com

Steve Garner
Neil Chanter
Jeff Bauer
STRONG-GARNER-BAUER, P.C.
415 E. Chestnut Expressway
Springfield, MO 658002
sgarner@stronglaw.com
neilchanter@stronglaw.com
jbauer@stronglaw.com

SL 3173990.1

Chris R. Miltenberger
THE LAW OFFICE OF
CHRIS R. MILTENBERGER, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
chris@crmlawpractice.com

SIMON GREENSTONE PANATIER, P.C.
Jeffrey B. Simon (*pro hac vice* forthcoming)
1201 Elm Street, Suite 3400
Dallas, Texas 75270
jsimon@sgptrial.com

DANNIE E. WILLIAMS, M.D.
5621 Delmar Blvd, Unit 108
St. Louis, MO 63112

DELMAR PRIMARY CARE
ASSOCIATES, LLC
c/o Kenneth Hopson
5621 Delmar Blvd, Unit 108
St. Louis, MO 63112

PURDUE PHARMA L.P.
c/o The Prentice-Hall Corporation
2711 Centerville Road, Suite 400
Wilmington, DE 19808

PURDUE PHARMA INC.
c/o The Prentice-Hall Corporation
80 State Street
Albany, NY 12207

THE PURDUE FREDERICK COMPANY
c/o The Prentice-Hall Corporation
2711 Centerville Road, Suite 400
Wilmington, DE 19808

RICHARD S. SACKLER, M.D.
c/o 5310 North Ocean Drive, Unit 801
Riviera Beach, FL 33404

TEVA PHARMACEUTICALS
INDUSTRIES, LTD.
c/o 5 Basel Street
Petach Tikva 49131, Israel

TEVA PHARMACEUTICALS USA, INC.
c/o Corporate Creations Network Inc.
12747 Olive Blvd., Ste. 300
St. Louis, MO 63141

CEPHALON, INC.
c/o Missouri Secretary of State
600 W. Main Street
Jefferson City, MO 65102

JOHNSON & JOHNSON
c/o One Johnson & Johnson Plaza
New Brunswick, NJ 08901-1241

JANSSEN PHARMACEUTICALS, INC.,
f/k/a JANSSEN PHARMACEUTICA INC.
and ORTHO-MCNEIL-JANSSEN
PHARMACEUTICALS, INC.
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

NORAMCO, INC.
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

SL 3173990.1

ENDO HEALTH SOLUTIONS INC.
c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

ENDO PHARMACEUTICALS INC.
c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

ALLERGAN PLC f/k/a ACTAVIS PLC
f/k/a ACTAVIS, INC., f/k/a WATSON
PHARMACEUTICALS, INC.
c/o Morris Corporate Center III
400 Interpace Parkway
Parsippany, NJ 07054

WATSON LABORATORIES, INC.
c/o 132 Business Center Drive
Corona, CA 92880

ACTAVIS LLC
c/o Morris Corporate Center III
400 lnterpace Parkway
Parsippany, NJ 07054

ACTAVIS PHARMA, INC. f/k/a WATSON
PHARMA, INC.,
c/o Corporate Creations Network Inc.
12747 Olive Blvd., Ste. 300
St. Louis, MO 63141

MALLINCKRODT, PLC
c/o College Business & Technology Park
D15 TX2V, Blanchardstown Road N,
Blanchardstown, Dublin 15, Ireland

MALLINCKRODT LLC
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

SPECGX LLC
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

MCKESSON CORPORATION
c/o Corporation Services Company
221 Bolivar St.
Jefferson City, MO 65101

CARDINAL HEALTH, INC.
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

AMERISOURCEBERGEN
CORPORATION
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

AMERISOURCEBERGEN DRUG
CORPORATION
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

EXPRESS SCRIPTS HOLDING
COMPANY
c/o CSC - Lawyers Incorporating Service
221 Bolivar St.
Jefferson City, MO 65101

EXPRESS SCRIPTS PHARMACY, INC.
c/o CSC - Lawyers Incorporating Service
221 Bolivar St.
Jefferson City, MO 65101

EXPRESS SCRIPTS, INC.
c/o CSC - Lawyers Incorporating Service
221 Bolivar St.
Jefferson City, MO 65101

SL 3173990.1

WAL-MART, INC.
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

WALGREEN COMPANY
c/o The Prentice-Hall Corporation System
221 Bolivar St.
Jefferson City, MO 65102

CAREMARKPCSHEALTH, LLC
c/o CT Corporation System
120 South Central Ave.
St. Louis, MO 63105

MISSOURI CVS LLC
c/o CT Corporation System
120 South Central Ave.
St. Louis, MO 63105

MYLAN N.V.
c/o Corporation Service Company
600 N. 2nd St., Ste. 401
Harrisburg, PA 17101

INSYS PHARMA, INC., d/b/a INSYS
THERAPEUTICS, INC.
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

OPTUM, INC.
c/o CT Corporation System
120 South Central
St. Louis, MO 63105

OPTUMRX, INC.
c/o CT Corporation System
120 South Central
St. Louis, MO 63105

TARGET CORPORATION
c/o CT Corporation
120 S. Central
St. Louis, MO 63105

CVS HEALTH CORPORATION
c/o Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

CAREMARK RX, LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

CAREMARK, LLC
c/o CT Corporation System
120 South Central
St. Louis, MO 63105

MYLAN PHARMACEUTICALS INC.
c/o Corporation Service Company
600 N. 2nd St., Ste. 401
Harrisburg, PA 17101

DEPOMED, INC.
c/o Arthur J. Higgins
7999 Gateway Blvd., Ste. 300
Newark, CA 94560

UNITED HEALTH GROUP
INCORPORA TED
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

*/s/ Gerald P. Greiman*

SL 3173990.1