UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **JEFFERSON COUNTY,** *et al.,* | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | )  CASE NO.  4:18-cv-01477-RLW |
| | ) |
| **PURDUE PHARMA L.P.,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Removal of this action is premised on a blatant misrepresentation of Plaintiffs' Petition and, specifically, the claims they bring and the relief they seek. It is clear from the Petition that Plaintiffs are not suing in a representative capacity and/or are not seeking class action status. This action is not a "class action" within the meaning of 28 U.S.C. § 1332(d)(2) nor a "mass action" within the meaning of 28 U.S.C. § 1332(d)(11); moreover this action does not arise under federal law. Accordingly, this action should be remanded to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis City, Missouri, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

### FACTUAL BACKGROUND

Plaintiffs are twenty political subdivisions in Missouri – specifically, eighteen counties and two cities.[1] On January 29, 2019, Plaintiffs filed this action in state court against manufacturers and distributors of prescription opioids, pharmacies, pharmacy benefit managers, and physicians

---

[1] Plaintiffs are Jefferson County, Butler County, Cape Girardeau County, Christian County, City of Independence, City of Joplin, Crawford County, Dent County, Dunklin County, Franklin County, Greene County, Iron County, Jasper County, Madison County, Perry County, Ste. Genevieve County, Stone County, Taney County, Texas County, and Washington County.

for the role that Defendants played in the prescription opioid epidemic devastating these political subdivision Plaintiffs.[2]

As set forth in Plaintiffs' Petition, Defendants developed and grew the prescription opioid market through a decades-long fraudulent scheme to mislead prescribing doctors and the public about the need for, and addictive nature of, opioids. (Plaintiffs' Petition, Doc. 1-2 at ¶ 73.)  With the dramatic increase in prescription opioid sales came a corresponding surge in abuse, addiction, improper prescribing of, and black market demand for opioids. (Id. at ¶ 79.)  Defendants created the market for mis-prescribed and diverted opioids, were aware of prescribing doctors' suspicious conduct and orders, and knew their products were being illegally diverted. (Id. at ¶¶ 667-73, 729.) Rather than addressing these problems, Defendants instead profited from the mis-prescribing and diversion of opioids.  When it became evident that the opioid epidemic was affecting localities across the country, including Plaintiffs, Defendants continued to fraudulently promote their opioid products for long term chronic pain and other treatments unsupported by scientific evidence. (Id. at ¶ 73.) Defendants continued to push dissemination of large quantities of prescription opioids to Plaintiffs' geographic areas without taking precautions necessary to minimize, much less prevent, illegal diversion. (Id. at ¶¶ 762-75.)

Plaintiffs jointly assert the following state law claims against all Defendants: public nuisance (Count I); negligence per se (Count II); negligence (Count III); fraud in the omission (Count IV); fraud (Count V); and negligent misrepresentation (Count VI). (Id. at p. 240, 244, 248, 250, 254, 257.)  These claims are all premised on a single, unifying theory: The Manufacturer, Distributor, Pharmacy, Pharmacy Benefit Manager, and Physician Defendants knowingly

---

[2] Venue is based upon the subsection that governs actions where any county is a plaintiff, Mo. Rev. Stat. 508.010(6), and upon the tort provision for first injuries occurring within the state of Missouri, Mo. Rev. Stat. 508.010(4).

participated in promoting the illegal drug market and, in doing so, significantly interfered with the public health, safety, and welfare of the citizens of the political subdivision Plaintiffs. Plaintiffs, as political subdivisions, have the authority to abate, or cause to be abated, any public nuisance including those acts that significantly interfere with the public health, safety, and welfare of their citizens and to recoup from the wrongful actors the public funds that Plaintiffs have been, are currently, and will continue to be expending in the future necessary to respond to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Plaintiff Counties and Cities.

On January 31, 2019, a mere two days after Plaintiffs filed this action and before Plaintiffs could effectuate service on Defendants, Defendant CVS Pharmacy, Inc. ("CVS") removed this action to federal court pursuant 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (Notice of Removal, Doc. 1 at ¶ 1.) More specifically, CVS first argues that Plaintiffs' claims involve questions of federal law sufficient to establish federal question jurisdiction and additionally argues that the action is removable under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), because the action is *essentially* a class action. For the reasons set forth below, Plaintiffs' claims do not *arise under* federal law; therefore, federal question jurisdiction is lacking. See 28 U.S.C. §§ 1331, 1441(a). Moreover, diversity citizenship is lacking, as Plaintiffs do not allege a class action on the face of the Petition, they do not allege any facts or legal arguments that could be purported to resemble a class action, and they do not seek relief on a class-wide basis. CVS's contention that Plaintiffs are representing their residents is more analogous to a "mass action" argument, which, for reasons set forth below, also fails.

**ARGUMENT**

**I. CVS Has the Burden of Establishing Federal Subject Matter Jurisdiction**

It is well settled that the parties seeking removal have the burden of establishing federal subject matter jurisdiction, and a district court must resolve all doubts about federal jurisdiction in favor of remand. *In re Business Men's Assurance Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993). The Class Action Fairness Act of 2005 (CAFA) "did not alter the general rule that the party seeking to remove a case to federal court bears the burden of establishing federal jurisdiction." *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819,822 (8th Cir. 2010).

**II. This Action is Not Removable Under Federal Question Jurisdiction**

In its Notice of Removal, CVS contends that Plaintiffs base their claims, in part, on alleged noncompliance with federal regulations and violation of federal law and, therefore, resolution of their claims requires "resolving substantial federal questions such that the lawsuit originally could have been filed in federal court. (Doc. 1 at ¶ 13.) While it is true that Plaintiffs allege that Defendants violated their duties under federal and Missouri laws and regulations, Plaintiffs are not pursuing any private right of action under those laws or regulations. Rather, their allegations regarding Defendants' violations of their duties under those laws and regulations support their negligence per se cause of action.

"Removal based on federal question jurisdiction is governed by the well pleaded complaint rule:  jurisdiction is established only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 923 (8th Cir. 2014). "Defendants may not inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law;" "it is firmly established that a federal defense, including a preemption defense, does not provide a basis for removal." *Id*. at 924 (internal

quotations omitted). In certain instances, federal question jurisdiction exists over state law claims that "implicate significant federal issues." *Id*. The question is whether a state law claim necessarily raises a stated federal issue, "actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. This "complete preemption doctrine," which is the only basis upon which removal can be proper, "converts an ordinary state-law claim into a federal claim where the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Gore v. TWA*, 210 F.3d 944, 949 (8th Cir. 2000). "Whether federal law preempts a state-law cause of action is a question of congressional intent." *Id*.

The Controlled Substances Act expressly states that "[n]o provision of this title shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this title and that State law so that the two cannot consistently stand together." 21 U.S.C. § 903. There is no conflict between federal and Missouri law regarding Defendants' duties to monitor and report illegal diversion of prescription opioids. See MO 20 CSR 2220-5.060; 21 U.S.C. §§ 801 et seq. Moreover, any interpretation of federal law would be raised as a *defense* to Plaintiffs' state law negligence per se cause of action. The express language of the Controlled Substances Act shows that Congress did not intend to completely preempt Plaintiffs' state law negligence per se cause of action, and the existence of a potential federal defense cannot provide a basis for removal. *See Gore*, 210 F.3d at 948-49 ("Congress has long since decided that federal defenses do not provide a basis for removal. … To permit removal on the basis of a federal

defense would deprive the plaintiff of the right to be the master of his cause of action."). Consequently, federal question jurisdiction is lacking, and this matter should be remanded to state court.

### III. This Action is Not a Class Action

The diversity of citizenship statute specifically defines the term "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Ignoring the fact that Plaintiffs neither seek to represent a class nor seek class-wide relief, CVS contends that removal of this action promotes CAFA's overall purpose.

On February 18, 2005, Congress enacted CAFA, Public Law 109-2, "[t]o amend the procedures that apply to consideration of *interstate* class actions …." Full Title, Pub. Law 109-2 (Feb. 18, 2005), Government Publishing Office, https://www.gpo.gov/fdsys/pkg/PLAW-109publ2/pdf/PLAW-109publ2.pdf (last visited Oct. 1, 2018) (emphasis added). Despite relying on the provision that CAFA promotes federal diversity jurisdiction over "class actions with interstate ramifications," CVS concedes that this action is brought by "twenty political subdivisions of Missouri." (Doc. 1 at ¶¶ 15, 1.) To be clear, this case is brought by and on behalf of twenty Missouri political subdivisions named in the Petition. It does not involve non-Missouri plaintiffs, and it does not involve a class of political subdivisions.

CVS contends that Plaintiffs seek damages for injuries to themselves "and their residents." (Id. at ¶ 2.) CVS further contends that the purported class is made up of the residents of the Plaintiff political subdivisions. (See id. at ¶ 23 ("Plaintiffs are acting as representatives for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported

misconduct").) Besides being plainly absurd – Plaintiffs' petition expressly states that this is not a class action (Petition, Doc. 1-2 at p.8) – this contention is contrary to class action law, which requires that a class representative be similarly situated to the class members such that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); Mo. R. Civ. P. 52.08(a)(3)-(4).[3] The relief sought by Plaintiffs is for past, present, and future expenditure of Plaintiffs' public funds to respond to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality. Specifically, Plaintiffs seek costs for providing medical care and other treatments, including medical examiners to determine the cause of overdoses and deaths; costs for public safety, including law enforcement, paramedics, jail space, drug task forces, over time hours, and various related costs to combating the illegal diversion of opioids, fentanyl and heroin trafficking; costs for treatment counseling and drug rehabilitation services; costs for removing children from their addicted parents' care, including foster care, legal representation for the parents and children, and parenting programs put in place to return children to their parents; costs for addicted juveniles who have engaged in criminal behavior in order to fund their addiction; costs for drug court; costs for drug education programs for children; costs associated with increased workers' compensation and health insurance claims; and costs associated with abating the epidemic/nuisance. (See Petition, Doc. 1-2 at ¶¶ 758, 776, 784, 796, 803, 808.) The damages sought by Plaintiffs are not consistent with and do not fairly represent what individual residents would seek in an action involving opioid addiction and injury/death – specifically including, but not limited to, damages for pain, suffering, loss of

---

[3] CVS's focus on the residents' claims supports Plaintiffs' contention herein that CVS conflates mass actions and class actions but, for strategic reasons, has tried to couch this case as a class action rather than a mass action.

consortium, and wrongful death. In no way do Plaintiffs purport to be representing a class of residents for damages the residents may have incurred; CVS's assertion to the contrary is baseless.

Under CVS's theory, a political subdivision could never bring an action on its own behalf to recover its expenditures of public funds but, rather, could only bring a class action brought on behalf of its residents. CVS offers no support for this meritless theory, and, as clearly shown by the specific relief sought by the political subdivision Plaintiffs, it is a wholly invalid basis for jurisdiction. Plaintiffs' reference in their Petition to the impact the opioid epidemic has had on their residents goes to the background story underlying Defendants' liability and Plaintiffs' damages. CVS's fundamental misunderstanding of the claims alleged and the applicable law is reflected in its statement that "Plaintiffs' alleged injuries derive from their residents' injuries and cannot be separated from those injuries." (Doc. 1 at ¶ 24.) In no way do Plaintiffs purport to be representing a class of residents for damages the residents may have incurred; their assertion to the contrary is absurd.

CVS relies upon *Williams v. Employers Mutual Casualty Company*, 845 F.3d 891, 901 (8th Cir. 2017), for the contention that "lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions." (Doc. 1 at ¶ 20.) In fact, in *Williams*, the plaintiff filed the complaint "not in her individual capacity, but as class representative." 845 F.3d at 900.[4] The Court specifically noted that it was clear "from the face of the complaint that [Missouri] Rule 52.08 is the precise rule under which Williams proceeds in her effort to enforce the judgment obtained for the benefit of the class." *Id.* at 901. The Court relied upon the pleadings to find that Williams brought suit based upon her status as the representative

---

[4] The underlying petition in *Williams* clearly shows that the plaintiff proceeded "as class representative." *Williams v. Employers Mut. Cas. Co.*, No. 4:13-cv-02393-RLW (E.D. Mo. Doc. 8 filed Nov. 26, 2013).

Page 8 of 14

of a certified class and, therefore, CAFA jurisdiction was appropriate. *Id*. at 900. Plaintiffs do not bring this action in a representative capacity and are the real parties in interest based upon the damages that they seek to recover. *Cf. West Virginia ex rel. McGraw v. Comcast Corporation*, 705 F. Supp. 2d 441, 452-54 (E.D. Pa. 2010) (finding CAFA jurisdiction appropriate and the West Virginia Antitrust Act (WVAA) akin to Federal Rule of Civil Procedure 23 and West Virginia's state analog, West Virginia Rule of Civil Procedure 23, because the WVAA can bind absentee cable subscribers and contains notice and opt-out protections similar to those provided under the class action rules).

CVS also relies upon *City of Huntington v. AmerisourceBergen Drug Corporation*, No. 3:17-01362, 2017 U.S. Dist. LEXIS 124462, 2017 WL 3317300 (S.D.W.V. Aug. 3, 2017). The quote relied upon by CVS is taken from *County Commission of McDowell County v. McKesson Corporation*, 263 F. Supp. 3d 639 (S.D.W.V. 2017), which the C*ity of Huntington* court adopted because the court found no material difference between the two cases. *City of Huntington*, 2017 U.S. Dist. LEXIS 124462 at *1-2. The *McDowell County* case was removed under a fraudulent joinder and fraudulent misjoinder theories, not CAFA, and the quote cited by CVS relates to interpretation of the diversity statute in general. *McDowell County*, 263 F. Supp. 3d at 643-44. CAFA is not implicated, argued, or even mentioned in *McDowell County* or *City of Huntington*.

CAFA's class action provisions have no applicability to this case. This case simply is not a class action as defined by 28 U.S.C. § 1332(d)(1); consequently, CVS cannot meet its burden of establishing that this case is a class action within the meaning of 28 U.S.C. § 1332(d)(2).[5]

---

[5] Even if the district court were to consider this case a class action, federal jurisdiction is barred under 28 U.S.C. § 1332(4)(A) because all Plaintiffs are citizens of Missouri and Defendants Express Scripts Holding Company; Express Scripts, Inc.; Express Scripts Pharmacy, Inc.; Mallinckrodt LLC; Missouri CVS LLC; Dannie E. Williams, M.D., and Delmar Primary Care Associates, LLC, also are citizens of Missouri. (See Petition, Doc. 1-2 at ¶¶ 31, 37, 41, 42, 45, 46;

### IV. This Action is Not a Mass Action

In addition to establishing federal jurisdiction over certain class actions, CAFA provides federal jurisdiction over "mass actions."  A "mass action" is defined as "any civil action … in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact …."  28 U.S.C. § 1332(d)(11)(B)(i).

As noted above, CVS's reliance on the claims of the residents of the Plaintiff Counties and Cities seems to conflate mass actions and class actions. What CVS seems to be arguing – which is contested by Plaintiffs – is that this case involves a mass action of 100 or more residents seeking relief against Defendants for the harm that they have suffered as a result of the opioid epidemic. Throughout the Notice of Removal, CVS details various injuries and deaths that have occurred to residents of the Plaintiff Counties and Cities and (wrongly) contends that Plaintiffs are seeking damages for injuries to themselves and their residents. (Doc. 1 at ¶ 26.)

CVS spends considerable time discussing the multi-district litigation proceeding pending in the Northern District of Ohio, *In re National Prescription Opiate Litigation*, MDL 2804, and proposing this case's transfer under 28 U.S.C. § 1407 to that proceeding in the removal papers and in a Notice of Potential Tag-Along Actions that was filed by Defendant Cardinal Health, Inc. with the Judicial Panel on Multi-District Litigation. (See Notice of Potential Tag-Along Actions filed in the JPML Feb. 1 2019, attached hereto as Exhibit 1.) However, the law is clear that any action removed to federal court under the mass action provision "shall not thereafter be transferred to any other court pursuant to section 1407 … unless a majority of the plaintiffs in the action request

---

see also 28 U.S.C. § 1332(d)(10) ("For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.").)

transfer pursuant to section 1407." 28 U.S.C. § 1332(d)(11)(C). Perhaps this is the reason that CVS has fabricated an argument that this action, brought by twenty political subdivisions of Missouri, is a "class" action as the basis for removal: Even though CVS relies in its argument on the contention that the individual residents are the real parties in interest, they did not want to base their removal on the mass action provision because they would not be able to seek transfer to the MDL.[6] Notably, the non-transferability provision does not apply "to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure" or "if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1332(d)(11)(C)(ii). Neither of those conditions exists in this case – there has been no class certification and Plaintiffs have not proposed to proceed as a class action; therefore, the Court should consider the basis of removal to be the mass action provision rather than the class action provision.

This case is not a mass action because Plaintiffs are twenty political subdivisions bringing this action on their own behalf under their authority to abate, or cause to be abated, any public nuisance including those acts that significantly interfere with the public health, safety, and welfare of their citizens. They seek damages for past, present, and future expenditure of Plaintiffs' public funds necessary to respond to the serious public health and safety crisis involving opioid abuse, addiction, morbidity, and mortality in Plaintiff Counties and Cities. As detailed above, they do not seek individual damages for personal injuries suffered by their residents; rather, they seek to recoup the costs they have expended because of the increased demands placed on their services as

---

[6] In its initial transfer order creating the MDL proceeding, the Judicial Panel on Multidistrict Litigation contemplated contemporaneous state court actions. (Doc. 1-1 at p. 3 ("Centralization will also allow a single transferee judge to coordinate with numerous cases pending in state courts.").) Therefore, CVS's assertion that all of these cases should proceed in the MDL because of their national importance is baseless.

a result of the opioid crisis. As the Supreme Court has recognized, the mass action "statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.' Had Congress intended the latter, it easily could have drafted language to that effect. *Mississippi ex rel. Hood v. AU Optonics Corp.*, 571 U.S. 161, 168-69 (2014) (resolving the question whether the provision also includes suits brought by fewer than 100 named plaintiffs on the theory that there may be 100 or more unnamed persons who are real parties in interest as beneficiaries to any of the plaintiffs' claims). The fact that the residents of Plaintiff Counties and Cities may benefit in some attenuated way from Plaintiffs' success in this action does not render those residents "persons" within the meaning of the statute. *See id*. Consequently, CVS cannot meet its burden of establishing that this case is a mass action within the meaning of 28 U.S.C. § 1332(d)(11).

## CONCLUSION

Although CVS's stated basis for removal is the class action provision of CAFA, its substantive argument falls within the mass action provision of CAFA. This case is neither a class action nor a mass action as defined in 28 U.S.C. § 1332(d)(1) and (d)(11). Moreover, this case does not arise under federal law as provided by 28 U.S.C. §§ 1331 and 1441. For the reasons stated herein, the Court should remand this action to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis City, Missouri, under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

Dated:  March 4, 2018                                  Respectfully submitted,

**CAREY DANIS & LOWE**

By:    /s/ *Jeffrey J. Lowe*_____
Jeffrey J. Lowe    #35114
John F. Garvey    #35879
Sarah Shoemake Doles    #45747
Alyson M. Petrick    #68323
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
(314) 725-7700

(314) 721-0905 (facsimile)
jlowe@careydanis.com
jgarvey@careydanis.com
sdoles@careydanis.com
apetrick@careydanis.com

**HOLLORAN SCHWARTZ & GAERTNER**
James P. Holloran
Anne Callis
9200 Litzsinger Road
St. Louis, MO 63144
(314) 772-8989
(314) 279-1333 (Facsimile)

**CHURMAN, HOWALD, WEBER, SENKEL & NORRICK, L.L.C.**
Derek Good, #50300
P.O. Box 800 – 301 Main Street
Hillsboro, MO 63050
(636) 797-2601 / (636) 797-2904 - Facsimile
good@thurmanlaw.com

**MARLER SCHRUM**
Sara L. Marler, #55056
Scott J. Schrum, #67310
Ramona Gau, #58686
406 E. Karsch Blvd.
Farmington, Missouri 63640
(573) 747-4573
(573) 747-4940 - Facsimile
smarler@marlerschrum.com
sschrum@marlerschrum.com
rgau@marlerschrum.com

**STYRON & SHILLING**
Patricia J. Shilling, #36356
302 E. Church Street
Ozark, Missouri  65721
(417) 581-3646
pjs@styronlaw.com

**STRONG-GARNER-BAUER, P.C.**
Steve Garner, #35899
Neil Chanter, #49507
Jeff Bauer, #48902
415 E. Chestnut Expressway

Springfield, MO 658002
(417) 887-4300
(417) 887-4385 (Facsimile)
sgarner@stronglaw.com
neilchanter@stronglaw.com
jbauer@stronglaw.com
**THE LAW OFFICE OF CHRIS R. MILTENBERGER, PLLC**
Chris R. Miltenberger
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**SIMON GREENSTONE PANATIER, P.C.**
Jeffrey B. Simon
TX State Bar No. 0078842
1201 Elm Street, Suite 3400
Dallas, Texas 75270
Tel:  (214) 276-7680
Fax: (214) 276-7699
jsimon@sgptrial.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on the 4th day of March, 2019, the foregoing was filed using the Court's electronic case filing system, thereby serving all registered attorneys of record.

                           /s/ *Jeffrey J. Lowe* _____
                           Jeffrey J. Lowe